UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                  :
                                                        :          Chapter 11
         415 WEST 150 LLC,                   :          Case No. 12-13141 (SMB)
                                                        :
            Debtor.                     :
-------------------------------------------------------X


### MEMORANDUM DECISION REGARDING APPLICATIONS FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

**A P P E A R A N C E S :**

KOSSOFF & UNGER
*Attorneys for Receiver*
217 Broadway, Suite 401
New York, New York 10007

       Sally E. Unger, Esq.
           Of Counsel

PRYOR CASHMAN LLP
*Attorneys for Hamilton Heights Funding LLC*
7 Times Square
New York, New York 10036-6569

       Seth H. Lieberman, Esq.
           Of Counsel

UNITED STATES TRUSTEE
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10004

       Serene E. Nakano, Esq.
           Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      Miriam Breier, the state court receiver (the "Receiver"), Kossoff & Unger (the "Firm"),

her attorneys, and Rosedale Management Company ("Rosedale"), her managing agent, seek

awards of compensation and reimbursement of expenses.  Their requests aggregate $218,815.25,

but according to the final operating report filed on June 20, 2013 (ECF Doc. # 98), the Receiver

was holding only $107,094.77 as of April 30, 2013.  The only specific objections relate to the

Firm's application, and raise two principal issues: (1) is the Firm entitled to compensation and

reimbursement of expenses pertaining to services rendered in connection with the Receiver's

application in this Court to hold the debtor and its managing member, Martin Weise, in

contempt, and (2) should Hamilton Heights Funding LLC ("Hamilton"), the secured lender

whose predecessor procured the appointment of the Receiver, be required to pay any shortfall

between the amounts awarded to the applicants and the balance in the Receiver's account.  The

United States Trustee ("UST") and Hamilton have also objected to certain time entries as vague

or lumped as well as the amount of time the Firm spent traveling and preparing the applicants'

fee applications.

    As explained below, the Court concludes that the Firm is not entitled to compensation or

reimbursement of expenses for pursuing the contempt motion.  In addition, the Court declines to

consider the request to compel Hamilton to cover the shortfall, and leaves the parties to their

state court remedies.  The disposition of the remaining objections is also set out below.

## BACKGROUND

    The facts are discussed in the Court's *Findings of Fact and Conclusions of Law

Regarding Receiver's Contempt Motion*, dated Nov. 16, 2012 ("*Contempt Findings*") (ECF Doc.

# 47).  At all relevant times, the debtor owned a seven-story building known as and located at

415 West 150th Street, New York, New York (the "Building").  The Building was subject to a

mortgage held by the Bank of Smithtown, Hamilton's predecessor.  The Bank of Smithtown

commenced a foreclosure proceeding in New York State Supreme Court, New York County, and

the state court entered an order appointing the Receiver (the "*Receiver Order*").  Among other

2

things, the *Receiver Order* authorized the Receiver to take charge, enter into possession of the

Building, enter into leases, and collect rent from the tenants. The *Receiver Order* also enjoined

the debtor, and anyone acting on behalf of the debtor, from collecting the rents, license fees and

other charges of the Building and from interfering in any manner with the Building or its

possession, and required the debtor, any other owner of record, or anyone acting on behalf of the

debtor, to turn over to the Receiver all rents collected from and after the date of the *Receiver*

*Order*.

On July 19, 2012 (the "Petition Date"), the debtor filed a *pro se* petition signed by Weise.

Hamilton moved for an order excusing the Receiver from complying with turnover requirements

and establishing the Receiver's powers and duties pursuant to 11 U.S.C. §543(d)(1). (*Motion of*

*Hamilton Heights Funding LLC Excusing Receiver from Compliance with Turnover*

*Requirements and Establishing Powers and Duties of Receiver Pursuant to 11 U.S.C. 543(d)(1)*,

dated Aug. 15, 2012 ("*Receivership Motion*") (ECF Doc. # 15).) The *Receivership Motion*

showed, among other things, that Weise had been held in civil and criminal contempt by the state

court acts committed in violation of the *Receiver Order* between the entry of the *Receiver Order*

and the Petition Date. These included his entry into 20-year sham leases in his own name with

the debtor for sixteen apartments in the Building at a below market monthly rent of $1,000.00

per apartment, the "subletting" of thirteen of those apartments to the actual tenants at

substantially greater monthly rents, and the retention of the rent paid by his "subtenants"

regardless of whether their checks were payable to the debtor or to Weise personally.

In light of the evidence revealed by the Receiver's submissions, the Court granted the

*Receivership Motion* and the Receiver remained in place and continued to fulfill her duties and

responsibilities as set forth in the *Receiver Order*. (*Order Granting Motion Excusing Receiver*

3

*from Compliance with Turnover Requirements and Establishing Powers and Duties of Receiver Pursuant to 11 U.S.C. § 543(d)(1)*, dated Aug. 27, 2012 ("*543(d) Order*") (ECF Doc. # 21).) The *543(d) Order* authorized the Firm and Rosedale to continue to represent the Receiver in accordance with the relevant state court orders, and stated that "[a]ll applications for fees and expenses by the Receiver, Managing Agent and/or Receiver's Attorney shall be made to this Court in accordance with the local rules of the United States Bankruptcy Court for the Southern District of New York."

On September 12, 2012, the Receiver filed her motion to hold Martin Weise and 415 West 150 LLC in contempt of court (the "*Contempt Motion*") (*see* ECF Doc. # 24).  The *Contempt Motion* showed that Weise continued to engage in substantially the same conduct that formed the basis for the state court's adjudication of both civil and criminal contempt.  The *Contempt Motion* sought a declaration of contempt but no other monetary or injunctive relief.  Neither Weise nor the debtor opposed the motion, and the Court granted the motion as to Weise, but denied it as to the debtor.  (*Contempt Findings* ¶¶ I, J.)

The Receiver thereafter submitted a proposed order to the Court.  (*See* ECF Doc. # 54.) The proposed order adjudged Weise in contempt.  It also directed Weise to remit $42,216.14 in rents and security deposits and sentenced Weise to thirty days of incarceration for civil contempt, but stayed the sentence if Weise paid $42,216.14 within thirty days.  Lastly, the proposed order required Weise to bear the costs and fees associated with the *Contempt Motion* and its enforcement.  The Court declined to sign the proposed order, stating in a Memorandum Endorsement that the Receiver had not sought any monetary or other relief except for a finding of contempt, and the Court had not awarded any other relief.  (ECF Doc. # 55.)  The Receiver subsequently submitted a revised order that the Court signed holding Weise in contempt but

granting no other relief.  (*Order of Contempt of Martin Weise*, dated Jan. 14, 2013 (ECF Doc. # 57).)

In the interim, and following the granting of relief from the automatic stay, Hamilton pursued the foreclosure suit in state court.  The referee conducted a sale on November 14, 2012, and issued a deed conveying title to an unrelated third-party on March 22, 2013.  The Court subsequently dismissed the chapter 11 case, but retained jurisdiction over all pending fee applications.  (*Order Dismissing Chapter 11 Case*, dated June 19, 2013 (ECF Doc. # 97).)  The three pending applications are described in greater detail below.

## DISCUSSION

### A.    Introduction

Bankruptcy Code § 330 authorizes a bankruptcy court to award reasonable compensation to a fee applicant based on actual, necessary services, and to reimburse him for his actual, necessary expenses.  11 U.S.C. § 330(a)(1).  The relevant criteria include the following:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

5

11 U.S.C. § 330(a)(3).

The fee applicant bears the burden of proof on its claim for compensation. *Zeisler &*
*Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.)*, 210 B.R. 19, 24 (B.A.P. 2d Cir.
1997); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  Even in the absence of an
objection, the Court has an independent duty to scrutinize the fee request.  *In re Busy Beaver*
*Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).  The applicant must submit contemporaneous
time records, although a computerized printout summary, in lieu of the original time slips, will
suffice.  *Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.)*, 233 B.R. 266,
278 & n.14 (Bankr. S.D.N.Y. 1999).

The standards for time records are contained in this Court's *Amended Guidelines for Fees*
*and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* (the
"*Guidelines*") which became effective on February 5, 2013, *see* General Order M-447 (Bankr.
S.D.N.Y. Jan. 29, 2013), and are now incorporated into Local Bankruptcy Rule 2016-1, *see*
Bankr. S.D.N.Y.R. 2016-1.  Proper time record keeping is necessary to enable the court to
determine the reasonableness of the work that has been performed.  Generally, fee applications,
standing alone, must contain sufficient detail to demonstrate compliance with § 330.  *Guidelines*,
(A).  Any uncertainties due to poor record keeping are resolved against the applicant.  *In re*
*Poseidon Pools of Am.*, 216 B.R. 98, 100-01 (E.D.N.Y. 1997).  Time records must be broken
down by project.  *Guidelines*, (A)(4)(i)-(iii).  Entries concerning communications (*e.g.*, telephone
calls, letters) should identify the parties and the nature of the communication.  *Id.*, (A)(4)(vii).
Entries relating to conferences or hearings should identify the subject of the conference or
hearing, and explain, where appropriate, why more than one professional from the applicant's
firm participated.  *Id.*  Finally, multiple project services rendered on the same day should be

listed in separate entries unless the aggregate daily time does not exceed one half hour. *Id.* Alternatively, and consistent with the practice followed here prior to the adoption of the *Guidelines*, the applicant may "lump" its daily project entries provided the entry indicates parenthetically the amount of time spent on each activity.

A court does not determine "reasonableness" through hindsight. *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007). A decision reasonable at first may turn out wrong in the end. The test is an objective one, and considers "what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (*citing In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) (Posner, J.)); *accord In re Angelika Films 57th, Inc.*, 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998), *aff'd*, 246 B.R. 176 (S.D.N.Y. 2000); *In re Keene Corp.*, 205 B.R. at 696; *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991).

## B.    Applications

### 1.    Rosedale

Rosedale seeks a final award of $16,000.00. The amount, $2,000.00 per month for the period August 2012 through March 2013, is consistent with the management agreement between Rosedale and the Receiver, and no party has objected. The application is allowed in full.

### 2.    The Receiver

The Receiver seeks a final award of $8,357.54 in commissions and $451.45 in reimbursed expenses. According to her accounting, she received $167,150.90 in income between the Petition Date and March 31, 2013, (*Affidavit of Miriam Breier*, sworn to May 13, 2013, at ¶ 6 (*see* ECF Doc. # 79)), and will eventually pay out that entire sum. She seeks an

award of 5%, *see* N.Y.C.P.L.R. § 8004(a) (McKinney 1981), no party in interest has objected, and she is allowed fees in the sum of $8,357.54.  However, her request for reimbursement of expenses is denied because her application failed to identify the expenses.

### 3.    The Firm

#### a.    The *Contempt Motion*

The Firm seeks a final award of $180,792.00 in fees and $13,214.26 in reimbursed expenses.  The UST and Hamilton object to the portion of the fees representing the time spent seeking an order of contempt against Weise.  The Firm prosecuted a contempt motion in state court and the separate *Contempt Motion* in this Court.  Hamilton objects to all fees relating to the two contempt motions, but the UST objection appears to be directed solely at the proceedings in this Court.  The motion in state court resulted in the adjudication of contempt against Weise and another, and arrest warrants for failing to turn over $36,750.00 in security deposits and $148,820.00 in rents.  (*Receiver's Statement in Further Support of Compensation of the Receiver, Managing Agent and Receiver's Attorney, and in Response to Objections of the U.S. Trustee and Hamilton Heights Funding LLC*, dated June 17, 2013 ("*Receiver's Response*"), at ¶ 8 (ECF Doc. # 91).)  Although Weise was never arrested and apparently did not turn over any sums, the Receiver's and the Firm's efforts in state court were reasonable and necessary when considered in light of what the hypothetical attorney would reasonably be expected to do.

The *Contempt Motion* is a different story.  According to the UST, the *Contempt Motion* did not confer any benefit on the estate.  Although the Court adjudged Weise in contempt, the Court refused to sign the Receiver's first proposed order because the Receiver did not seek monetary or injunctive relief or civil incarceration, but only an adjudication of contempt.

8

(*United States Trustee's Response with Respect to Final Fee Applications*, dated June 11, 2013

("*UST Response*"), at 5-6 (ECF Doc. # 87).)

In response, the Firm argued that the UST forced the Receiver to bring the *Contempt Motion*. (*Receiver's Response* ¶ 11 ("The Receiver's contempt motion against Weise in this Court (Dkt. 24) was prosecuted at the insistence of UST herself.").) Sally Unger, Esq., the partner at the Firm handling this matter, stated that Serene Nakano, Esq. of the UST's Office "stated she wished the motion brought in Bankruptcy Court so that Federal authorities would have the basis to prosecute Weise's ongoing contempt of Court and, potentially, bankruptcy fraud." (*Receiver's Response* ¶ 13.)

My recollection is that Ms. Nakano denied that she gave such a "direction" at the June 18, 2013 hearing, but whether she did is beside the point. Unger's response implies that she would not otherwise have brought the motion. If she believed at the time that the *Contempt Motion* was neither reasonable nor necessary, she should not have brought it. A lawyer is not entitled to compensation for services the Court determines were unreasonable and unnecessary even if the UST "directed" the lawyer to perform those services.

Furthermore, the lack of any conceivable benefit to the estate should have been obvious from the outset. The Receiver requested an adjudication of contempt but did not seek any monetary, injunctive or other relief against Weise in the *Contempt Motion*. She had already obtained an order of contempt against Weise in state court, and a second order of contempt would not help the estate.

Accordingly, the Firm is not entitled to an award of compensation based on the services rendered in connection with the *Contempt Motion*. Following the June 18th hearing, and in

response to the Court's inquiry, Unger compiled a chart derived from the Firm's time records

that set forth the time records attributable to the *Contempt Motion*.  The submission, which was

not filed, ascribed 38.8 hours and $11,230.00 in fees to the *Contempt Motion*.  The Court

reviewed the Firm's time records as well as the supplemental chart, and concludes that

$12,362.50 is attributable to the *Contempt Motion*.  The relevant time entries are reflected in

Exhibit A to this decision, and the last column denotes whether the entry also appeared in

Unger's supplemental submission.  The fees attributable to these entries, $12,362.50, are

disallowed.

### b.    Lumped Entries

"Lumping or block billing, a timekeeping practice that involves including multiple

services in a single, aggregated time entry without any breakdown of the time spent on each

service, complicates a court's efforts 'to gauge the reasonableness of time expended on each

activity.'"  *In re West End Fin. Advisors, LLC*, No. 11-11152 (SMB), 2012 WL 2590613, at *5

(Bankr. S.D.N.Y. July 3, 2012) (quoting *Ass'n of Holocaust Victims for Restitution of Artwork &

Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 Civ. 3600(SWK), 2005 WL 3099592, at

*5 n. 9 (S.D.N.Y. Nov. 17, 2005)); *accord Brous*, 370 B.R. at 576.  The *Guidelines* allow the

timekeeper to lump discrete time entries if they do not aggregate more than 0.5 hours;

alternatively, the timekeeper can lump more than 0.5 hours provided he or she notes

parenthetically the amount of time spent on each discrete activity.  Where the timekeeper lumps

entries that aggregate more than 0.5 hours and does not indicate parenthetically how much time

was devoted to each activity, the Court will allow no more than 0.5 hours.  *E.g.*, *Brous*, 370 B.R.

at 577.

Exhibit B to this decision identifies twenty-two lumped entries that are not included on

Exhibit A. These entries aggregate $7,335.00. Each entry is allowed to the extent of 0.5 hours,

or the aggregate amount of $2,692.50, and the balance of $4,642.50 is disallowed.

### c.    Vague Entries

Exhibit C lists vague time entries for which the Firm is seeking compensation and that

are not included on Exhibit A or Exhibit B. Generally, they concern telephone calls, meetings or

other communications that fail to identify the other party to the communication or the subject

matter of the communication. The UST also objected to certain admittedly vague time entries

relating to Court appearances (*e.g.*, an entry on 8/23/12), but the Court was able to determine the

subject of the hearing. The vague entries aggregate $6,530.00. Eighty percent, or $5,224.00, of

these aggregate fees is allowed, and the balance of $1,306.00 is disallowed on account of

vagueness.

### d.    Travel Time

The UST contends that the allowed amount attributable to travel time should be reduced

by 50%. (*UST Response* at 7-8.) Exhibit D to this decision lists the entries targeted by the UST

that do not appear on one of the previous exhibits. They aggregate $4,470.00.

The UST's objection is not directed at any significant amount of time spent on airplanes

traveling from distant lands. The travel time at issue was local, *de minimis*, billed by

timekeepers at low rates ($150.00 per hour) and incident to some other service such as

delivering, filing or retrieving documents. Further, the travel time was not the result of a

decision by a firm to staff a case with lawyers from out of town offices necessitating travel that

could have been avoided. Since it does not appear that the Firm billed the estate for more than

one hour for travel time incident to the performance of a reasonable and necessary service, the Court declines to reduce the award on account of the travel time. *Cf. In re S.T.N. Enter., Inc.*, 70 B.R. 823, 837 (Bankr. D. Vt. 1987) (holding that travel time to or from a single location exceeding one hour or longer may be compensated at one-half the attorney's or other professional's hourly rate, unless the fee application clearly shows the work performed while traveling).

### e.    Fee Application Preparation Time

The UST objects to excessive amount of time spent preparing fee applications. The charges, which are not listed on any of the previous charts, appear on Exhibit E. They total $19,677.50, or approximately 9% of the total fees *and expenses* sought in the case.[1] While the Firm is entitled to compensation for the reasonable amount of time spent preparing fee applications for itself, Rosedale and the Receiver, the percentage of overall time billed to the preparation of fee applications in this case is high. In *Mesa Air Grp., Inc.*, 449 B.R. 441 (Bankr. S.D.N.Y. 2011), Bankruptcy Judge Martin Glenn surveyed the law, and although declining to adopt a percentage cap, concluded that the "3-5 % range [of the total fees sought] is a useful metric." *Id.* at 445; *accord In re Borders*, 456 B.R. 195, 212 (Bankr. S.D.N.Y. 2011).

The metric is a useful one in this case, and the Court will allow 5%, rounded up to $11,000.00, and disallow $8,677.50.[2] Several factors support this conclusion. The narrative

---

[1]    Two entries by "Mark," one on January 10, 2013 ($1,120.00) and another on January 11, 2013 ($245.00) appear to duplicate other entries, although the descriptions of the services are not identical. In light of the disposition of the objection, it is unnecessary to deal separately with the duplication issue.

[2]    The UST also objected to $365.00 billed for the Firm's response to the UST's informal objection to its interim fee application. (*UST Response* at 8-9.) The objection is well-taken as an applicant should not be compensated for fixing a defective fee application. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006). Nevertheless, given the amount of the overall disallowance, including the disallowed amounts pertaining to the

portions of the interim and final applications are relatively brief.  For example, the Firm's

interim application, the most comprehensive of the interim applications, included a ten page

narrative.[3]  (*Application of Sally E. Unger for an Interim Award of Compensation for Services

Rendered and Reimbursement of Expenses as Counsel for the Receiver*, dated Mar. 19, 2013

(ECF Doc. # 63).)  The narrative portion of the Firm's final application, which was largely cut

and pasted from the interim application, is also only ten pages.  (*Application of Sally E. Unger

for a Final Award of Compensation for Services Rendered and Reimbursement of Expenses as

Counsel for the Receiver*, dated May 13, 2013 (ECF Doc. # 85).)  I recognize that it can take

time to be brief, but the only significant activity described in this otherwise ordinary single asset

real estate case involved the contempt proceedings against Weise.  In addition, the Firm spent a

substantial amount of time preparing interim applications that were filed, but for some reason,

were never presented to the Court.

To recapitulate, the amount of $26,988.50 in fees requested by the Firm is disallowed,

and the balance of $153,803.50 is allowed.  The disallowed amount reflects 14.93% of the total

fees requested by the Firm.  Applying the same percentage of disallowance to the Firm's request

for reimbursement of expenses, *see In re Keene Corp.*, 205 B.R. at 706, $1,972.62 will be

disallowed, and the Firm is entitled to reimbursement of the balance of $11,241.64.

C.    **Summary**

The following table summarizes the resolution of the fee applications:

---

preparation of the fee applications and the small sum involved in fixing a defective application, the Court declines to
disallow the $365.00.

[3]        The Firm is not entitled to compensation for maintaining, reviewing or editing time records.  *See In re CCT
Commc'ns, Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at *9 (Bankr. S.D.N.Y. Aug. 24, 2010).

| Applicant | Fees Requested ($) | Fees Allowed ($) | Expenses Requested ($) | Expenses Allowed ($) |
|---|---|---|---|---|
| Rosedale | 16,000.00 | 16,000.00 | 0 | 0 |
| Receiver | 8,357.54 | 8,357.54 | 451.45 | 0 |
| Firm | 180,792.00 | 153,803.50 | 13,214.26 | 11,972.62 |
| **Totals** | **205,149.54** | **178,161.04** | **13,665.71** | **11,972.62** |

### D.    Hamilton's Obligation to Cover the Shortfall

The aggregate award in the amount of $190,133.66 exceeds the $107,094.77 balance in the estate by $83,038.89.  As a result, the applicants will only receive slightly more than 56% of their awards.  The Firm and Rosedale have asked the Court to compel Hamilton to make up the difference citing N.Y.C.P.L.R. § 8004(b).[4]  Hamilton opposes the request.

The Court declines to rule upon this request, and defers to the state court.  First, it is far from clear that this Court has jurisdiction over a dispute between the Firm and Rosedale on the one hand, and Hamilton on the other.  They are not debtors, and the resolution of the dispute will not have any conceivable effect on this dismissed case.  The Court also lacks supplemental jurisdiction, 28 U.S.C. § 1367, because the claim against Hamilton does not form part of the same case or controversy regarding the *allowability* of the applicants' fees and expenses against the estate.  Second, even if the Court has supplemental jurisdiction over the dispute, it declines in

---

[4]    Section 8004(b) states:

**Allowance where funds depleted.**  If, at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver.  This subdivision shall not apply to a receiver or his attorney appointed pursuant to article twenty-three-a of the general business law.

its discretion to exercise it.  It is unnecessary to resolve the claim against Hamilton in order to

pass upon the fee applications, and if the Court entertains the dispute, it must first engage in a

separate factual inquiry regarding whether to surcharge Hamilton.  Third, the state court

appointed the Receiver at the request of Hamilton or its predecessor, and is in a better position,

and perhaps the only position, to pass on the request to surcharge Hamilton for procuring that

appointment.  Accordingly, the award of fees in this case is without prejudice to the rights of any

of the applicants to pursue claims against Hamilton under N.Y.C.P.L.R. § 8004(b) in the state

court.

The foregoing constitutes the Court's findings of fact and conclusions of law.  The Court

has reviewed all of the objectionable entries, and if not specifically addressed in this decision,

the objections are overruled as lacking in merit.  Settle order on notice that conforms to Local

Bankruptcy Rule 2016-1(b), Bankr. S.D.N.Y.R. 2016-1(b).

Dated: New York, New York
       August 28, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge